FILED
2024 Aug-22 PM 12:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT EVANS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | ______________ |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

# <u>COMPLAINT</u>

Plaintiff Robert Evans ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by The Lincoln National Life Insurance Company ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Polaris Industries, Inc. ("Polaris"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policy sponsored by Polaris.

2. The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln.

3. Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records and information.

## JURISDICTION

4. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

**PARTIES**

7. Plaintiff Robert Evans is a participant in the Plan and thus entitled to benefits available thereunder.

8. Defendant Lincoln is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. Lincoln is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21) as it related to the time when Plaintiff's disability arose.

10. One of Lincoln's designated agent for service of process is:

The Prentice Hall-Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11. Lincoln is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12. Lincoln is an entity providing services to the Plan at issue.

13. Lincoln is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14. Polaris's LTD plan is an employee welfare benefit plan funded entirely by a long-term group insurance policy sold by Lincoln, the company which also underwrote this group policy.

15. This group policy was purchased by Polaris to confer certain benefits upon Plaintiff and other employees.

16. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term.

18. There are no Plan documents made available indicating that Lincoln has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

## LINCOLN'S LIABILITY

19. Before becoming disabled, Plaintiff worked for Polaris as a welder on its production line.

20. In December 2020, Plaintiff suffered a compound fracture of his tibia and fibula where they come together above the ankle after tripping at a neighbor's house while approaching the front porch. It was a gruesome injury with bones protruding through the skin in two places and the ligaments around the upper ankle tearing completely away.

21. Plaintiff underwent surgery for the injury where a metal plate was installed to connect the bones and facilitate healing. However, Plaintiff developed a reaction to the plate and the hardware had to be removed before the bone could grow fully back together.

22. Plaintiff's complications following his surgery continued, resulting in additional procedures, but Plaintiff nevertheless developed post-traumatic arthrosis with the non-union of the distal fibula and additional treatment was necessary.

23. Ultimately, Plaintiff developed chronic pain in his right ankle with significantly limited range of motion. This chronic pain, which continues to this day, is accompanied by swelling and signs of sensory changes. Because the pain in his ankle substantially impacted his gait, Plaintiff also since developed back pain.

24. After suffering his injury, Plaintiff applied for short term disability benefits with Lincoln which similarly insured Polaris's short-term disability plan. Lincoln found Plaintiff to be disabled under the STD plan's disability definition and therefore fully qualified to receive the entirety of that benefit.

25. When the STD period ended, Lincoln then found Plaintiff to satisfy the definition of total disability under its LTD coverage also. Lincoln informed Plaintiff of this approval in a letter dated July 16, 2021, and commenced payment as of June 23, 2021 after Plaintiff's completion of that policy's 180-day elimination period.

26. Lincoln continued to find Plaintiff disabled until informing him in a letter dated April 20, 2023, that it had found that he would no longer qualify to receive benefits under the policy as of June 23, 2023, pursuant to a term in the policy where the definition of disability changed from an "Own Occupation" definition to an "any occupation" definition.

27. Lincoln informed in this letter that it found Plaintiff to have regained the capability to return to work as a welder (his original occupation which has a medium physical demand level), or at the very least, in light-level jobs such as "Assembler, Production" and "Deliverer, Outside" as those occupations are defined in the *Dictionary of Occupational Titles* ("DOT").

28. Plaintiff thereafter retained counsel and submitted an initial appeal to Lincoln challenging its determination that his claim should be terminated and closed.

29. This appeal also challenged the overpayment calculation with which Lincoln had since presented him which exceeded the amount he had been paid by the Social Security Administration in back benefits by nearly $6,000 (in other words, claiming an offset for an amount that Plaintiff was not awarded and did not receive).

30. In support of his appeal, Plaintiff submitted to Lincoln complete sets of his medical records including his treatment and assessment information since the date of his injury and a daily journal Plaintiff he had maintained documenting his day to day pain and associated activity levels as well as the effects of his medications to document that he is unable to return to work in *any* fulltime capacity.

31. Lincoln responded to these materials during that initial appeals process with a medical records review it coordinated through its vendor Exam Coordinator's Network ("ECN"), an entity that services insurance industry clients to help them curtail their loss experiences.

32. The medical records review in this instance was performed by Annie Layno-Moses, MD, who claimed to be board-certified in physical medicine and rehabilitation, as well as pain medicine.

33. Constrained by the questions Lincoln and ECN asked her to answer narrowly, Dr. Layno-Moses offered a limited opinion that did not address the impact of Plaintiff's constant pain on his ability to work in a full time setting in any capacity.

34. When provided with this review, Plaintiff, through counsel, noted this limited scope in Dr. Layno-Moses's review and how extraordinary it was that Lincoln avoided asking her, *as a pain specialist*, any questions about the existence or impact Plaintiff's pain reasonably had on his functionality.

35. Plaintiff also responded at that time to a new vocational review supplied

by Lincoln which somehow found Plaintiff could return to work in a light duty capacity even though Dr. Layno-Moses had confirmed that Plaintiff could not stand or walk more than "occasionally," which is below the level accorded to "light" physical demand work according to Appendix C of the DOT.

36. Upon receiving this response, Lincoln provided an "addendum" report from Dr. Layno-Moses where she was asked to "review" the pain journal that Lincoln previously had withheld from consideration in her initial report, but was not asked any questions about whether the pain documented in that pain journal supported any additional functional limitations other than those relating to the abilities to exert different levels of force from various positions.

37. Plaintiff responded to this addendum on March 18, 2024, noting that Dr. Layno-Moses's report remained incomplete because she was not asked any questions about the impact Plaintiff's pain would have on his work attendance or his abilities to maintain pace, concentration and focus over a full-time period. This was significant because Dr. Layno-Moses *had agreed* in her addendum that Plaintiff's report that his principal issue as constant and searing pain was accurate.

38. To address this problem, Plaintiff provided questions to Lincoln that were addressed to Dr. Layno-Moses for response since she had been presented as an "independent" reviewer.

39. Plaintiff also noted that the vocational review issue still had not been

corrected.

40. In a letter dated April 3, 2024, Lincoln, having failed to take any of the corrective actions requested by Plaintiff as to the incomplete and erroneous manner with which it had conducted its review, and having withheld Plaintiff's questions from Dr. Layno-Moses, denied Plaintiff's appeal, but adding this time what appeared to have been a new vocational review suggesting that Plaintiff could also return to work in a sedentary capacity as a "Lock Assembler" or an "Ampoule Sealer."

41. Lincoln did, however, revisit its overpayment calculation and revised that amount downward to $17,415.53.

42. Lincoln concluded by informing Plaintiff he had a second right of appeal he must pursue to exhaust his administrative remedies.

43. Plaintiff exercised that second right of appeal in a letter dated June 6, 2024, arguing again that the vendor review upon which it was based was irredeemably flawed and incomplete because no questions had been asked of the reviewer as to how Plaintiff's pain impacted his attendance for any full-time job or his executory functions over the course of a full-time work week.

44. Plaintiff also noted the earlier request for an IME so Lincoln's reviewers could assess that issue in person and judge Mr. Evans's credibility of his pain complaints in his journaling directly.

45. Within the month, Lincoln again used ECN to provide another

similarly-limited medical records review, this time from Dr. Solomon Rojhani.

46. And once again, Plaintiff, through counsel, was compelled to note that Lincoln had not provided the reviewer with a single question about the impact Mr. Evans's pain would have on his work attendance and abilities to maintain pace, concentration, and focus, noting clearly that it is *these issues* that prevent him from being able to return to work fulltime in any gainful capacity.

47. Again, Plaintiff attached questions addressed to Dr. Rojhani that would have cured that issue since Lincoln suggested that he too was an "independent" reviewer.

48. On August 6, 2024, Lincoln provided Plaintiff with an "addendum" from Dr. Rojhani that again avoided the questions Plaintiff had sent for his response.

49. As it had done with Dr. Layno-Moses, Lincoln not only refused to transmit Plaintiff's questions to Dr. Rojhani, but did not even reformulate some version of them on its own for his response.

50. Instead of being asked to opine on the *evidence* Plaintiff had provided, Dr. Rojhani was asked to review only the "impact of the main related arguments" in Plaintiff's appeal letter his attorney prepared and whether those "arguments" changed his opinion.

51. Dr. Rojhani's response was, "No, the arguments do not change the previously noted restrictions and limitations."

52. As it had done with Dr. Layno-Moses, Lincoln not only refused to transmit Plaintiff's questions to Dr. Rojhani but did not even reformulate some version of them on its own for his response.

53. Plaintiff noted these defects in his response sent to Lincoln on August 12, 2024, and asked again that the claim be reinstated because of the unreliability and incompleteness of Dr. Rojhani's report and addendum, especially since it had been clearly proven that Dr. Rojhani (and Dr. Layno-Moses before him) was not "independent" at all, but had been employed only to further Lincoln's financial interests in denying and closing Plaintiff's claim.

54. Two days later, on August 14, 2024, Lincoln denied Plaintiff's second appeal and informed that his administrative remedies were at an end.

55. Although the claim record at this time is not presently verified for completeness due to its clear exclusion of items such as claims procedures and other materials, the documents identified thus far by Plaintiff as being part of his claim file however, establish numerous breaches and errors committed by Lincoln during the course of administering Plaintiff's claim, including:

(a) The targeting of Plaintiff's claims for denial because ERISA governs;

(b) The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the

Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim through an overall failure to communicate with Plaintiff about the claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim, especially in its handling of so-called "independent" medical reviewers;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information through the habitual exclusion of Mr. Evans's pain journaling from its reviewers' considerations;

(f) Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(g) Failing to give meaningful consideration to Plaintiff's Social Security disability determination;

(h) Purposefully limiting and curtailing the review of its medical personnel and otherwise improperly exerting influence on them to opine against payment of benefits and actively preventing Plaintiff's access to them; and

(i) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff and instead relying on the demonstrably deficient report of a biased and unqualified doctor to perform an incomplete review of only records.

56. Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, Lincoln determined that Plaintiff was not "disabled" and that he did not qualify for LTD benefits.

57. As set forth above in connection with Lincoln's fiduciary breaches, Lincoln's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their decision.

58. This conflict of interest further calls into question the credibility of Lincoln's claims personnel and reviewers.

59. Lincoln did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29

C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

60. Lincoln's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations. In fact, no written decision was issued at all within the time required. Instead, Lincoln has provided post hoc rationalizations for its denial of Plaintiff's appeal.

61. Plaintiff has exhausted all Plan remedies even though Lincoln's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

62. Because the group policy in question is expressly governed by Minnesota law, no deference is to be afforded to Lincoln's decision making because Minn. Stat. § 60A.42 invalidates any grant of discretionary authority that may exist in the policy or other plan documents.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert Evans respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a. For an order against Lincoln awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all

prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against Lincoln awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order requiring Lincoln to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Robert Evans
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104