FILED
2024 Oct-07 PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT EVANS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:24-cv-1152-LCB** |
| | ) | |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

# PLAINTIFF'S MOTION TO DISMISS OR STRIKE DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S COUNTERCLAIM

Plaintiff Robert Evans ("Mr. Evans"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby requests that Defendant Lincoln National Life Insurance Company's counterclaim stated in its Answer at ECF No. 5 at pp. 20-21 be dismissed or stricken to the extent it seeks an impermissible recovery of an overpayment of Plan benefits against Mr. Evans.

## INTRODUCTORY STATEMENT

Mr. Evans brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) for violations of the Employee Retirement Income Security Act of 1974 committed by

Lincoln National Life Insurance Company ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Polaris Industries, Inc. Because Mr. Evans was awarded Social Security disability insurance ("SSDI") benefits that coordinate with Lincoln's payments, Lincoln has filed a counterclaim with its Answer seeking reimbursement of an alleged overpayment that resulted from Mr. Evan's subsequent receipt of this SSDI award.

This counterclaim fails for two reasons. First, Lincoln in alleging a "breach of contract," fails to identify any of the benefits it previously paid that remain in Mr. Evans's possession from which it can recover its alleged overpayment, and instead seeks a recovery against Mr. Evans's general assets. The United States Supreme Court has explicitly addressed this issue and has held that an ERISA Plan or administrator may not bring a claim at law seeking such a judgment. *See Montanile v. Bd. of Trustees of the National Elevator Industry Health Plan*, 577 U.S. 189, 136 S. Ct. 651, 193 L. Ed. 2d 556 (2016)(holding that, where an ERISA plan participant dissipates monies received that may be an offset under an ERISA plan, an ERISA fiduciary may not sue under 29 U.S.C. 1132(a) seeking a recovery against the general assets of that plan participant).

Second, to the extent Lincoln, through its counterclaim, attempts to recover the funds Mr. Evans received from the SSA for the collection of its overpayment,

that too is prohibited, because Lincoln's counterclaim in that event is barred pursuant to 42 U.S.C. § 407.

For these reasons, discussed in greater detail below. Lincoln's counterclaim warrants dismissal.

## STANDARD OF REVIEW

Rule 12(b)(6) is designed to "streamline litigation by dispensing with needless discovery and fact-finding through the prompt elimination of baseless claims. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 588 (2007).

Lincoln's counterclaim is irredeemably flawed as discussed below and should promptly be dismissed.

## LINCOLN'S COUNTERCLAIM

Lincoln's counterclaim is for "breach of contract … resulting from Plaintiff's failure to reimburse Lincoln in accordance with the … LTD plan." (ECF No. 5, Counterclaim at ¶ 1.) To effectuate relief for this "breach of contract" claim, it seeks a "constructive trust and other equitable relief under 29 U.S.C. § 1132(a) over any benefits from either Lincoln or the Social Security Administration currently in the

possession of Plaintiff." (*Id.*) Lincoln then attempts a second time to make a claim against Mr. Evans's SSDI benefits, stating that it "seeks recovery from Plaintiff based on unjust enrichment of the Plaintiff by virtue of Plaintiff's retention of benefits from the Social Security Administration…." (*Id.*) Lincoln provides no identification of any accounts to which such funds may be traced.

## <u>REASONS WHY THIS MOTION MUST BE GRANTED</u>

### I. LINCOLN'S COUNTERCLAIM MUST BE DISMISSED BECAUSE LINCOLN CANNOT IDENTIFY A SEGREGATED FUND HOLDING THE ALLEGED OVERPAYMENT.

ERISA, pursuant to 29 U.S.C. § 1132(a)(3), permits certain persons and entities to seek equitable relief, but not legal relief. Because Lincoln seeks a legal remedy in the form of monetary damages for "breach of contract" chargeable against Mr. Evans's assets through its counterclaim is stated, that claim is clearly barred by Supreme Court precedent.

#### A. The Supreme Court's Jurisprudence Governing a Plan Fiduciary's Attempt to Recover an Alleged Overpayment of Past Benefits.

The United States Supreme Court has issued several rulings on this exact issue, with the most recent decision being *Montanile*, cited *supra.* Through these rulings, the Supreme Court has consistently established that the only cause of action available to ERISA-governed benefit plans seeking reimbursement of overpayments

is a claim brought under 29 U.S.C. § 1132(a)(3) seeking "appropriate equitable relief."

The Supreme Court first explored the limits of ERISA's limitation of remedies to those involving only equitable relief in *Mertens*, 508 U.S. 248. In *Mertens*, a class of former pension plan participants sued an insolvent pension plan's actuary for losses to the plan due to the actuary's alleged negligence. *Id.* at 250-251. The Court rejected the petitioner's claims and held that "equitable relief" contemplated by the statute does not constitute damages because damages are legal in nature. Section 1132(a)(3) permits only those forms of equitable relief "typically available" prior to the merger of courts of law and equity as of the time when the Constitution was adopted in 1787. *Id.* at 257-58.

In 2002, the Supreme Court decided *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), where the Court applied the limits of *Mertens* to a subrogation suit. There, the respondent suffered quadriplegia from a horrific car crash where her health plan paid over $400,000 in medical benefits relating to her injuries. *Id.* at 207, The health plan included a subrogation provision purporting to require reimbursement of the funds paid on her behalf if a third-party recovery was obtained. *Id.* The respondent filed a lawsuit arising out of the accident which settled for $650,000 where $256,745.30 out of the settlement was allocated to a special needs trust, $373,426 was allocated to attorneys' fees and costs, $5,000 was

allocated to Medicaid, and $13,828.70 was allocated to satisfy the plan's subrogation interests. *Id.* at 207. Great-West then sought to enforce its subrogation lien.

The Court found Great-West's claims to be barred under § 1132(a)(3) on several grounds. First, the Court held that Great-West's claim that it was seeking injunctive relief due to "respondents' failure to reimburse the Plan" in violation of the terms of the plan was barred because "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210–11. Also, the Court disagreed that Great-West sought equitable restitution as "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. The Court continued:

> a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. See 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution, supra, § 160, Comment a, at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, supra, § 215, Comment a, at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession

*Id.* at 213–214. Great-West could not seek equitable restitution, however, because "the funds to which petitioners claim an entitlement under the Plan's reimbursement provision – the proceeds from the settlement of respondents' tort action – are not in respondents' possession." *Id*.

Four years later the Supreme Court decided *Sereboff v. Mid Atl. Med. Servs*., 547 U.S. 356 (2006), another subrogation case. There, the petitioners, a husband and wife, were both involved in a car crash, and both had their medical expenses paid by the same ERISA-regulated health plan. *Sereboff*, 547 U.S. at 360. The health plan alleged that it was owed approximately $74,000 for healthcare paid and asserted a lien. The Sereboffs sued the at-fault party and settled their claims for $750,000. *Id.* Neither the Sereboffs nor their attorney sent any money to the plan to satisfy the lien. *Id.*

The health plan sued under § 1132(a)(3) and sought to collect from the Sereboffs the medical expenses paid subject to its asserted lien. *Id.* The Sereboffs' attorney had distributed the settlement proceeds, so the plan promptly sought a temporary restraining order and preliminary injunction requiring the couple to retain and set aside at least $74,000 from the proceeds. *Id*. By agreement the parties stipulated to preserve $74,000 in an investment account, "until the [District] Court rules on the merits of this case and all appeals, if any, are exhausted." *Id.*

The Supreme Court noted that the "impediment to characterizing the relief in Knudson as equitable is not present here" because "that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan" were preserved by agreement and set aside in the investment account. Id. at 362–63. The Court further held that, besides seeking equitable relief, the nature of the plan's claim was equitable as well because it

> identified a particular fund, distinct from the Sereboffs' general assets – "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)" – and a particular share of that fund to which Mid Atlantic was entitled – "that portion of the total recovery which is due [Mid Atlantic] for benefits paid".

*Id.* at 364. The Supreme Court held the health plan had an equitable lien by agreement and the funds were identifiable and segregated.

In *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013), the Court reaffirmed the holding in *Sereboff*, noting that an equitable subrogation lien by agreement in a health plan may be enforceable as written. 569 U.S. at 88. Like *Sereboff*, this was an action to enforce a healthcare lien when McCutchen had recovered money from a tortfeasor when he suffered life altering injuries in a car crash. *Id.* at 92. McCutchen had argued that the healthcare lien should be reduced by the attorneys' fees he incurred as a matter of equity. *Id.* at 93–94. The Court agreed because the plan's subrogation provision did not expressly provide that the plan's lien would not be

reduced by attorneys' fees. *Id.* at 99–100. The common fund doctrine applied to reduce the lien, and the case was remanded back to the trial court. *Id.* at 101–105.

Most recently the Supreme Court decided *Montanile*, 136 S. Ct. 651, 193 L. Ed. 2d 556 (2016). There, the petitioner, a participant in a health plan, was injured in a car crash. 136 S. Ct. 655. The petitioner incurred over $100,000 in medical bills paid by the health plan. *Id.* The petitioner sued the drunk driver who hit him and secured a settlement for $500,000. *Id.* at 656. The health plan sought reimbursement from petitioner while his attorney argued that the health plan could not seek reimbursement. *Id*. The settlement proceeds were ultimately disbursed to the petitioner. *Id.*

The health plan fiduciary sued the petitioner several months after funds had been dissipated seeking to enforce its subrogation rights or reimbursement rights. The District Court granted summary judgment to the health plan fiduciary, the Eleventh Circuit affirmed, and the Supreme Court granted certiorari to resolve "whether an ERISA fiduciary can enforce an equitable lien against a defendant's general assets under these circumstances." *Id.* It answered that question in the negative. *Id.* at 657.

The Supreme Court traced its decisions in *Great-West*, *Sereboff*, and *McCutchen*, to explain that an employee benefit plan may seek to enforce an equitable lien by agreement on settlement proceeds subject to its subrogation

provisions under certain circumstances. *Id*. at 657−658. The Supreme Court remarked that, although the health plan's suit was equitable, the health plan's "underlying remedy would have been equitable had it immediately sued to enforce the lien against the settlement fund then in Montanile's possession." *Id.* at 658. Given the timing of the fiduciary's suit, the Supreme Court answered another issue —whether a plan could assert an equitable lien by agreement against the defendant's general assets. *Id.* at 657.

The Court reviewed equitable treatises and determined that the remedy the fiduciary sought was legal and not equitable. Under traditional principles of equity, equitable liens are "ordinarily enforceable only against a specifically identified fund." *Id.* at 659. This is because "[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets'." *Id.* at 658–59 (*quoting* 4 S. Symons, *Pomeroy's Equity Jurisprudence* §1234, p. 694 (5th ed. 1941) (Pomeroy)). Thus, "[i]f, instead of preserving the specific fund subject to the lien, the defendant dissipated the entire fund on nontraceable items, that complete dissipation eliminated the lien." *Id.* at 659. "The plaintiff could not attach the defendant's general assets instead." *Id.*

Regarding the merits of *Montanile*, the Court held that the health plan "misread *Sereboff*" and that they "must still identify a specific fund in the

defendant's possession to enforce the lien." *Id.* at 660. Also, the Court held that substitute money decrees, deficiency judgments, and the swollen assets doctrine did not afford the health plan equitable relief, as they were not "typically available" at equity. *Id.* at 660–61. The Court held that absent a separate, identifiable fund, restitution was not permitted, and the general assets of the health plan participant were not subject to the health plan's subrogation rights under § 1132(a)(3).

### B. Lincoln's Single-Paragraph Counterclaim for "Breach of Contract" Fails to State an Actionable Claim for Equitable Restitution Pursuant to 29 U.S.C. § 1132(a)(3) under These Supreme Court Precedents.

As the foregoing authorities clearly establish, only equitable relief is afforded under 29 U.S.C. § 1132(a)(3), with all other forms of relief statutorily preempted. This means that any claim for restitution by Lincoln – which can be asserted only under this provision given ERISA's governance -- must include a specific identification of those funds then in the beneficiary's possession that rightfully belong to the plan. When reaffirming this holding in 2016, the *Montanile* Court cited *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012) holding that a disability benefit plan could not sue for reimbursement of an overpayment out of a Social Security payment under a recovery theory unless specific funds are traceable to an identifiable *res.*

Claims brought by ERISA plan administrators (like Lincoln here) to recover reimbursement from plan participants must satisfy the requirements for an equitable

lien by agreement for an equitable restitution claim to be properly stated. As the authorities above explain, the distinguishing feature of an equitable restation claim from a claim for *legal* restitution is that a claim for equitable restitution can be asserted only over specifically identifiable funds. Lincoln's counterclaim here does not meet that requirement.

In this case, Lincoln's single-paragraph counterclaim statement does not identify any such specific and traceable funds where such funds are segregated and may be found. Therefore, its counterclaim cannot proceed under 29 U.S.C. § 1132(a)(3) and must be dismissed. Indeed, when Lincoln wrongfully terminated Mr. Evans's LTD benefit, he had to use whatever funds were available to her to pay her day-to-day expenses. Whatever monies that may have existed – whether from Lincoln's previous benefit payments or from Mr. Evans's SSDI award -- have long since been dissipated. Therefore, it is <u>impossible</u> for Lincoln to state such a claim.

In conclusion, as the foregoing authorities demonstrate, a lien creditor such as Lincoln may not impose personal liability with regard to a contractual obligation to pay money from the lienor's assets generally as that would result in legal as opposed to equitable relief, when legal relief is not available under 29 U.S.C. § 1132(a)(3). *Sereboff*, 547 U.S. at 363. But that is exactly what Lincoln seeks to do here through its claim for breach of contract that, notwithstanding the inclusion of "equity-ish"

language, clearly seeks a legal remedy, especially where it has failed to identify any accounts where the funds it seeks to recover may be found and traced.

## II. UNDER 42 U.S.C. § 407, LINCOLN'S BREACH OF CONTRACT CLAIM MUST ALSO BE DISMISSED TO THE EXTENT IT SEEKS MONIES PAID TO MR. EVANS BY THE SOCIAL SECURITY ADMINISTRATION.

Lincoln's breach of contract claim must be dismissed for the additional reason that it is barred by 42, U.S.C. § 407(a) where it seeks monies the Social Security Administration paid to Mr. Evans. As a matter of law, no lien can be imposed on Social Security benefit payments. Specific to this issue, 42 U.S.C. § 407(a) states:

> The right of any person to any future payment under this title [ 42 U.S.C. §§401 et seq.] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title [42 U.S.C. §§401 et seq.] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Lincoln seeks to do indirectly what it cannot do directly by requesting through its claim for breach of contract the imposition of a constructive trust on general assets, as it may not attach in any way Social Security benefits. It is hornbook law that contracts made in violation of statutes are void in the hands of all persons involved in the guilt of the transaction. *Harrison v. Jones*, 80 Ala. 412 (1885). To the extent Lincoln's reimbursement agreement attempts to contradict or overcome the plain language of § 407, that agreement is void by operation of law and is unenforceable.

## CONCLUSION

For these reasons, Lincoln's counterclaim seeking legal remedies for breach of contract arising out of an ERISA plan is due to be dismissed because the relief sought is prohibited under 29 U.S.C. § 1132(a)(3) and governing Supreme Court precedents. Its claim also runs afoul of 42 U.S.C. § 407(a) in its attempt to seize Mr. Evans's Social Security payments.

Respectfully submitted,

*/s/M. Clayborn Williams*
M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and service will be perfected upon the following CM/ECF participants electronically on this the 7th day of October 2024.

Iwana Rademaekers, Esq.
LAW OFFICES OF IWANA
RADEMAEKERS, P.C.

17304 Preston Road, Suite 800
Dallas, TX 75252
iwana@rademaekerslaw.com

Matthew W. Robinett
NORMAN, WOOD, KENDRICK
& TURNER
Ridge Park Place, Suite 3000
1130 22nd Street S.
Birmingham, AL 35205
mrobinett@nwkt.com

*/s/M. Clayborn Williams*
M. Clayborn Williams (ASB-9101-A43M)